Peter C. Kelly, II, Esq. (014503)  (pkelly@hoklaw.com)
Leslie Rakestraw, Esq. (010697) (lrakestraw@hoklaw.com)
Jesse M. Showalter (026628)
**HOLLOWAY ODEGARD & KELLY, P.C.**
3101 North Central Avenue, Suite 1200
Phoenix, Arizona 85012      **(165-043)**
Phone:  (602) 240-6670
Fax:      (602) 240-6677

Attorneys for Defendant Horton Archery, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Cheri Garcia, individually,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Horton Archery, LLC, a foreign corporation; John and Jane Does I-X; Black Corporations I-X; White Partnership I-X;<br><br>　　　　　Defendants. | Case No:  3:12-cv-08062-MHB<br><br>**DEFENDANT'S STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**(Magistrate Judge Michelle H. Burns)** |

Pursuant to Rule 56(c)(1) of the Federal Rules of Civil Procedure, Defendant Horton Archery, LLC submits the following statements of fact to support its Motion for Summary Judgment.

1.　　On October 10, 2010, Plaintiff Cheri Garcia was injured while her husband ". . . attempted to use a newly purchased crossbow manufactured by Defendant Horton Archery" and the bowstring snapped, causing Plaintiff to lose her left eye.  **[Plaintiff's First Amended Complaint,** ¶9, on file herein.]

**A.　　Plaintiff's and her husband's experience with weapons:**

2.　　Plaintiff's husband, Michael Garcia, testified that he has used crossbows as well as weapons his entire life.  **[Deposition M. Garcia,** p. 21, line 23 – p. 22, line 2, attached as **Exhibit A.]**

3.　　Michael Garcia considered himself experienced with a crossbow as of October 10, 2010, the date of the accident.  **[Exhibit A,** p. 22, lines 6-8.]

4. The accident happened at the Seven Mile Hill Shooting Range and Cheri Garcia had been to the shooting range two times before the accident to practice rifle shooting. **[Deposition Cheri Garcia,** p. 31, line 6 – p. 32, line 4, attached as **Exhibit B**.]

5. Plaintiff owns firearms herself: two shotguns, two .22s, a Marlin rifle and a .38 handgun. **[Exhibit B,** p. 35, lines 1-23.]

6. Michael Garcia purchased the crossbow that is the subject of this lawsuit online through a distributor. [**Exhibit A,** p. 22, lines 9-23**; Exhibit B,** p. 46, lines 8-16.]

7. There is no dispute that the distributor of the crossbow was Michael Vergona of Vergona Outdoors in Pennsylvania. [**Exhibit C,** attached.]

8. Michael Garcia read the instruction booklet that came in the box with the crossbow several times just a few days before the accident happened. **[Exhibit A,** p. 23, lines 3-25**; Exhibit B,** p. 49, lines 2-11.]

**B.    Horton's Safety Instructions:**

9. On the Horton subject crossbow, in bold letters, is the following warning: READ MANUAL PRIOR TO USE. **[Exhibit D,** attached.]

10. The following warning appears on the fourth page in the Horton Owner's Manual:

> **Never, under any circumstances, shoot your crossbow while behind or directly alongside others.**  If the crossbow was to malfunction, injuries may result to those who are standing directly alongside the crossbow. **[Exhibit E,** ¶11**.]**  [Emphasis in original.]

**C.    How the accident happened:**

11. Michael Garcia went to the shooting range on Sunday, October 10, 2010, to use the crossbow for the first time. **[Exhibit A,** p. 24, lines 1-7; **Exhibit B,** p. 70, lines 15-20.]

12. Michael Garcia took his wife, Cheri Garcia, to the Seven Mile Hill Shooting Range on that day because she was planning to do some shooting with the rifle she had with her that day. **[Exhibit A,** p. 28, line 17-22.]

2

13. Cheri Garcia was helping her husband sight in the new crossbow. **[Exhibit A,** p. 29, lines 5-10.]

14. On October 10, 2010, Michael Garcia fired his crossbow ten to thirteen times before the accident. **[Exhibit A,** p. 33, lines 13-19.]

15. While Michael Garcia was firing the crossbow, Cheri Garcia was behind him and a little to his right. **[Exhibit A,** p. 39, lines 16-10; **Exhibit B,** p. 41, lines 16-21.]

16. There was only about a foot and a half between Cheri Garcia and her husband while he was firing his crossbow. **[Exhibit B,** p. 42, line 21 – p. 43, line 2.]

17. Michael Garcia testified that he had loaded an arrow and pulled the trigger on the crossbow when the bowstring broke. **[Exhibit A,** p. 43, lines 7-18.]

18. The broken bowstring hit Plaintiff's left cheek, nose and right eye. **[Exhibit B,** p. 64, line 17 – p. 65, line 6.]

**D.     Dr. Bosch's opinions:**

19. Plaintiff's only liability expert, Dr. Bosch, has not found any defect in the crossbow itself. [**Deposition Bosch,** p. 29, lines 11-20, attached as **Exhibit F**.]

20. Of the ten opinions in Dr. Bosch's report, not a single opinion concerns a defect in the crossbow manufactured by Defendant Horton. [**Report Dr. Bosch**, attached as **Exhibit G.**]

21. Dr. Bosch does not have any opinion at this point that there was a design defect. [**Exhibit F,** p. 30, lines 23-25.]

22. All of Dr. Bosch's opinions about the actual product in this case involve informational defect claims – the adequacy or inadequacy of the warnings that came with the product. [**Exhibit F,** p. 56, lines 2-17.]

23. Dr. Bosch's report contains three opinions regarding the inadequacy of Horton's warnings:

    a.     The Horton Archery warnings printed on the accident crossbow are inadequate, ineffective and improperly designed. **[Exhibit G,** p. 74, ¶11.2.]

3

      b.     The Horton Archery warnings printed in its Owner's Manual are inadequate, ineffective and improperly designed. **[Exhibit G,** p. 74, ¶11.3.]

      c.     The Horton Archery warnings do not address the danger associated with the use of its cocking mechanism, specifically the cocking sled rope failure. **[Exhibit G,** p. 74, ¶11.4.]

24. Dr. Bosch admitted in his deposition that the cocking mechanism is not part of the present case and has nothing to do with this accident. **[Exhibit F,** p. 83, lines 8-14.]

25. Dr. Bosch, opines in his report that if Ms. Garcia were not in harms [sic] way, she would not have been injured with [sic] the subject bowstring fractured. **[Exhibit G,** p. 75, ¶11.7.]

26. If Plaintiff had not been standing where she was standing, she would not have been injured. **[Exhibit F,** p. 89, lines 14-22.]

27. Dr. Bosch's only opinion regarding causation is that if the Horton Archery warnings had been properly designed, it is more probable than not that Mr. Garcia would not have allowed Ms. Garcia to be in harms [sic] way. **[Exhibit G,** p. 75, ¶11.6.]

28. Dr. Bosch testified that the foundation for his opinion that if the warnings had been properly designed Mr. Garcia would not have allowed Plaintiff to be in harm's way was the fact that Mr. Garcia had actually reviewed the Horton Owner's Manual. **[Exhibit F,** p. 84, lines 15-23.]

29. Michael Garcia's testimony that he read the Owner's Manual several times is the entire basis for Dr. Bosch's opinion that if the Horton warnings had been properly designed it is more probable than not that Mr. Garcia would not have allowed Plaintiff to be in harm's way. **[Exhibit F,** p. 86, lines 1-14.]

**E.   Dr. Bosch's methodology:**

30. Dr. Bosch's methodology regarding the warning issue was reliance on his experience, specifically in the last seven years, and reliance on the ANSI standard and some of the ancillary materials. **[Exhibit F,** p. 148, lines 16-24.]

31. Dr. Bosch did not compare the Horton warnings with any crossbows' warnings on or with other crossbows for sale to the public. [**Exhibit F,** p. 80, line 20 – p. 82, line 5.]

32. Dr. Bosch did not design an experiment to test either Mr. Garcia's or anyone else's comprehension of Horton's warning as written. [**Exhibit F,** p. 155, lines 9-12.]

33. Dr. Bosch did not perform any tests to prove or disprove his opinion that Horton's warnings were inadequate. [**Exhibit G.**]

34. Dr. Bosch did not perform any tests to prove or disprove his opinion that the warning Dr. Bosch designed would be effective. [**Exhibit G,** recommended warning appears on p. 70, ¶9.]

35. Dr. Bosch has never been hired by a manufacturer to design a warning for a product. [**Exhibit F,** p. 54, lines 17-19.]

35. Dr. Bosch never tested the warning that he designed on any consumers. [**Exhibit F,** p. 149, lines 20-22.]

36. Dr. Bosch's conclusions and opinions were derived from his review of the supplied materials, review of various online materials, examination of the accident crossbow and bowstring, examination of an exemplar crossbow and bowstrings and upon his training, education and experience. [**Exhibit G,** p. 72, ¶11.]

**DATED** this 17th day of October, 2014.

                **HOLLOWAY ODEGARD & KELLY, P.C.**

By   *s/Peter C. Kelly*
      Peter C. Kelly, II
      Leslie Rakestraw
      Jesse M. Showalter
      3101 North Central Avenue, Suite 1200
      Phoenix, Arizona 85012
      ***Attorneys for Defendant Horton Archery, LLC***

**CERTIFICATE OF SERVICE**

I certify that on this 17th day of October, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Timothy G. Tonkin
PHILLIPS LAW GROUP, P.C.
20 E. Thomas Road, Suite 2500
Phoenix, Arizona   85012
Phone:  602-258-8900
Fax:       602-279-9155
timt@phillipslaw.com
***Attorneys for Plaintiff Garcia***

I further certify that on this 17th day of October, 2014, I **emailed/mailed** a courtesy copy of the attached document with the transmittal of a Notice of Electronic Filing to the following:

Magistrate Judge Michelle H. Burns
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 623
401 West Washington Street, SPC 58
Burns_chambers@azd.uscourts.gov


            *s/Genna Zappia*